MOYER *vs.* SHOEMAKER.

The general rule is that a party who seeks to recover back money which he has paid under a void or a rescinded contract, must show that he in fact paid *money.* But an exception has sometimes been allowed, when something else has been received *as* money. *Per* GRIDLEY, J.

Where a party sells and assigns to another a perpetual lease of lands, and in part payment of the consideration agreed to be paid by the assignee, receives from him a deed of a piece of land, with covenants of warranty, *it seems* that the assignor, upon a failure of title to the land covered by the deed, cannot bring an action against the assignee to recover that part of the consideration for which the land was received in payment.

It is a general rule that where there is an open contract of warranty, the remedy of the party must be confined to that. *Per* GRIDLEY, J.

It is a universal rule that when a party seeks to recover back money paid upon a contract, on the ground that such contract is void for fraud, or that it has been rescinded, such party must restore, or offer to restore, whatever he has received under the contract ; so as to put the other contracting party *in statu quo.*

And in order to put the parties *in statu quo,* whatever may be valuable to the defendant must be restored to him, though it be of no value to the plaintiff.

Accordingly *held,* that before an action could be sustained, to recover the consideration paid for land, sold to the plaintiff by the defendant and conveyed by deed with covenants of warranty, on the ground of a failure of title, the plaintiff must execute to the defendant a reconveyance of the land, or offer to do so.

THIS was an action of assumpsit. The declaration contained the common money counts, and counts on an insimul computassent, and also counts for lands sold, and for the unexpired term of a lease sold to the defendant. There was a bill of particulars, in which the plaintiff claimed the sum of $240, specified as the consideration of a conveyance of lands executed by the defendant to the plaintiff, on the 28th of Nov. 1846. Plea the general issue, with a notice of payment. The cause was tried at the Herkimer circuit in October, 1848, before Justice Gridley, when a verdict was rendered for the plaintiff, for $270,08, subject to the opinion of the court on a case. The facts appear in the opinion of the court.

*C. A. Benton,* for the plaintiff.

*L. Ford,* for the defendant.

*By the Court,* GRIDLEY; J. This action was brought to recover back the purchase price alleged to have been paid for eight acres of land, under the following circumstances: On the 28th of Nov. 1846, the defendant conveyed to the plaintiff eight acres of land lying in the north half of lot No. 12, of L'Hommedieu's patent, in Herkimer county, for the consideration expressed in the deed of $240, with the usual covenant for quiet enjoyment. On the same day the plaintiff assigned to the defendant a perpetual lease of a tract of land in another patent, for the consideration expressed in the assignment of $1050. And it was proved that the eight acres were conveyed in part payment of the $1050; so that, in point of fact, the $240 was not paid in money, but to that extent the transaction was an exchange of lands. It was further proved, in support of the action, that long before the 28th of November, 1846, the entire north half of lot No. 12, in L'Hommedieu's patent, had been conveyed, a part by George Moyer to David and Peter Elwood, and a part by the defendant to William Watts, and that the grantees were in possession of the entire north half of the lot, including the eight acres, when the plaintiff purchased and received his deed.

Upon these facts, and these alone, the plaintiff seeks to recover back the consideration paid for the eight acres, under the counts for money paid, and money had and received, upon the ground that the consideration has failed, and that the contract should be decreed to be rescinded. A very learned and ingenious argument has been submitted to us, in favor of the plaintiff's right to recover; and we would be glad to find some legal ground upon which we could, consistently with the rules of law, adjudge him entitled to succeed.

We are, however, compelled to hold, that there is at least one insurmountable obstacle to the plaintiff's right to recover. There are also several grave difficulties in the way of a re-

covery, before we reach the particular ground to which we referred.

I. The general rule is, that a party who seeks to recover back money which he has paid, under a void or a rescinded contract, must show that he in fact paid *money.* An exception has sometimes been allowed, where something else has been received *as* money. Here, however, there never was an independent money debt for $240. It was a part of the original contract, that this should be, *pro tanto,* to the extent of $240, an exchange of lands; and we cannot say but that if the entire consideration for the perpetual lease had been to be paid in cash, the price would have been less than $1050. In other words, the price at which the lease lands were conveyed may have been enhanced, for the reason that $240 was to be paid in an exchange of lands.

II. It is also a general rule that, while there is an open covenant of warranty, the remedy of the party must be confined to that. (14 *John.* 210.　5 *Cowen,* 195.　4 *Wend.* 267, 277.　4 *Hill,* 345.　1 *Id.* 147.　2 *Term Rep.* 100.) It is argued that inasmuch as no eviction can be proved by the plaintiff, he is remediless on his warranty. And it does seem to be settled in this state, that no action will lie on the covenant of warranty without an eviction, and that an ineffectual attempt, by action, to obtain possession, will not satisfy the condition of the covenant. (5 *Hill,* 599, *and the cases there cited.*) Hence it is contended, that unless a remedy exists to recover back the money paid, the party is without any means of redress. To this suggestion it may be answered, that if a party, with full knowledge of the facts that the land has been conveyed by previous deeds, and that the grantees in those deeds are in possession under an adverse title, consents to pay his money and take a deed, with a covenant that only makes the grantor liable in the event that the grantee should obtain possession, and be thereafter evicted by paramount title—there being no fraud nor mistake in the case—he has no reason to complain of the law. His misfortune is the fruit of his own imprudence and rashness. But on the contrary, if there were either *fraud*

or *mistake*, in relation to the material facts of the case, then it is the province of the court of chancery to grant relief by rescinding the entire contract, if the application be promptly made upon the first discovery of the fraud or mistake. In this case it should be said, there was no evidence of any fraudulent representations or concealment on the part of the defendant; and no ignorance or mistake of the plaintiff, concerning either the former deeds, the adverse possession, or the nature of the covenants inserted in his deed. But

III. We do not place our decision upon either of these grounds. There is another which is unanswerable. It is a universal rule, that when a party seeks to recover back money paid upon a contract, on the ground that it is void for fraud, or that it has been rescinded, such party must restore or offer to restore whatever he has received under the contract; so as to put the other contracting party in *statu quo.* It is well said by Justice Allen in *Rathbone* v. *Stocking*, (2 *Barb. Sup. Court Rep.* 145,) that "The action for money had and received is an equitable action, and will lie whenever the defendant has received money belonging to the plaintiff, which, according to natural justice and equity, he ought to refund and pay over. It takes the place of a bill in equity, and should be encouraged within proper limits. It should not be extended, however, to cases in which the defendant may be *deprived of any right* or be subject to any inconvenience thereby." If there be any right which the vendor has transferred, by his deed, the vendee cannot recover back the money he has paid, without restoring, or offering to restore, that right to the vendor. In 2 *Hill's Rep.* 288, 293, it is laid down that where one party is desirous of rescinding a contract by reason of the other's default, he *must rescind it in toto*, and cannot hold on to any part of the consideration which he has received. He must put the other party in *statu quo*, by an entire surrender of any thing he has obtained under the contract, or he cannot recover the consideration in an action for money had and received. So too in 3d *Greenleaf's Reports*, 30, in which case it appeared that the defendant had transferred a recognizance signed by one Proctor, in exchange for

goods purchased of the plaintiff, who discovering that he had been defrauded, wrote to the defendant that he would have nothing to do with the recognizance; it was held that he must return the recognizance and put the defendant in *statu quo*, before he could recover for the goods, and that giving the defendant notice was not enough. Again in *Masson* v. *Bovet*, (1 *Denio*, 69, 74,) the court say that a party who would disaffirm a fraudulent contract must return whatever he has received under it; that he must rescind it *in toto* or not at all. Another case in which this principle is announced is that of *Hogan* v. *Weyer*, (5 *Hill*, 390,) where it is laid down as an undeniable proposition, that a party seeking to avoid a contract on the ground of fraud must offer to restore that which he has received, so that the parties may be put in *statu quo*. (*See also Chit. on Cont.* 678, 752; 5 *East*, 449; 4 *Mass. Rep.* 502; 15 *Id.* 320; 4 *Denio*, 554.) From these authorities it is clear that in order to put the parties in *statu quo*, whatever may be valuable to the defendant must be restored to him, though it should be of no value to the plaintiff.

Now, upon this controlling principle applicable to the rescission of contracts, and the right to a recovery of the consideration paid upon them, it is obvious, that the plaintiff should have executed to the defendant a reconveyance, or offered to reconvey the 8 acres of land for which he has the defendant's deed with covenants of warranty. The parties are not in *statu quo* until that is done. The plaintiff still holds a deed which may be valuable to him. If the 8 acres should be vacated so that the plaintiff could get possession of the land, he could then enjoy it till he should be evicted by due course of law; and then he could recover on his covenant against the defendant. So too while he holds this deed, any title which the defendant should acquire to the premises in question, would come to the plaintiff and vest in him. Again; the reconveyance of the title would be very important to the defendant. It is probable (especially as the plaintiff has proved no fraud by misrepresentation, concealment or otherwise,) that there has been some mistake in some of the deeds by which the 8 acres

were previously conveyed, and that the defendant has rights either to reform those deeds and correct mistakes in them, against some other parties, which he could not enforce while the title was out of him; but which he might enforce if the plaintiff should reconvey to him and thus clothe him with all the rights, legal and equitable, which he possessed before his contract with the plaintiff. Nothing short of this can put the parties in *statu quo;* nor amount to a rescission of the contract *in toto*, without which there can be no recovery in this action. The defendant must therefore have judgment.

Judgment for the defendant.

SAME TERM. *Before the same Justices.*