## UNITED STATES v. HART.
### No. 18152.

District Court, E. D. Pennsylvania.
April 1, 1935.

Thomas Curtin, Asst. Dist. Atty., and Charles D. McAvoy, U. S. Atty., both of Philadelphia, Pa., for the United States.

Paul Freeman (of Freeman, Fox & Steeble), of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit at law brought by the government to recover money erroneously refunded to a taxpayer by reason of a mistake of law. The defendant, however, is not the taxpayer who received the refund but the residuary legatee under her will; her estate having been distributed.

The case is now before the court upon a motion for judgment for want of sufficient affidavit of defense which, under the Pennsylvania practice, admits the facts pleaded and puts in issue the legal sufficiency of the plaintiff's statement as well as that of the affidavit of defense.

From the admitted facts it appears that refunds representing supposed overpayments of income tax for the years 1927, 1928, and 1930 were made to Betsy R. Fisher during her lifetime, and that the money was received in part by her executors immediately after her death; that her executors have filed their account which has been duly audited; and that they have made final distribution under order of court, prior to the commencement of this suit. In addition, it was conceded at the argument, and, if material, may be taken as though in the case either by stipulation or by amendment of the pleadings, that this defendant, Mrs. Fisher's residuary legatee, received from the executors a sum in excess of the amount for which the suit is brought.

The right of the government to proceed against a transferee of assets for the recovery of unpaid taxes is not involved. Although it is pretty clear that whoever drew the statement of claim thought that the revenue laws, and particularly section 610 (b) of the act of 1928 (26 USCA § 1646 (b), had something to do with his cause of action, both parties assert that the facts pleaded, as distinguished from mere legal conclusions, show that the suit is not for a tax. In this I think that they are right. Woolner Distilling Co. v. United States (C. C. A.) 62 F.(2d) 228, 230. At any rate, I agree that Mrs. Fisher's obligation to return the money paid her by mistake was not a tax liability. This eliminates any difficulties which might have arisen from the failure of the Commissioner of Internal Revenue to assess the amount claimed as a tax deficiency; but the question remains whether there can be any recovery against a transferee into whose hands the money has come, or, for that matter, against any one other than the person who received the money.

The suit is at law, and the precise nature of the obligation sought to be en-

forced is not easy to define. Generally, it may be said to be quasi-contractual, that is, imposed by law or public policy without regard to consent or intention of the parties, and contractual only in the sense that the inequity of the situation is remediable by action of assumpsit. In Keyes v. First National Bank (C. C. A.) 25 F.(2d) 684, 688, the court said: "The action of assumpsit for money had and received is equitable in its essential nature and purpose. It lies for money which ex aequo et bono the defendant ought to refund. The underlying promise is only implied, imposed by law from the facts."

Possibly the basis of the plaintiff's right here is even broader, for whereas where the mistake involved is entirely one of law private individuals are, except in unusual circumstances, denied a remedy, it is well settled that in case of the government, states, and even municipalities, money paid by mistake may be recovered. Thus, in Wisconsin Central Railroad Co. v. United States, 164 U. S. 190, 17 S. Ct. 45, 52, 41 L. Ed. 399, the court referred to "the principle that parties receiving moneys illegally paid by a public officer are liable ex æquo et bono to refund them." And in Badeau v. United States, 130 U. S. 439, 452, 9 S. Ct. 579, 32 L. Ed. 997, the court said merely that the government is not bound by the mistakes of its officers, whether of law or fact, and in Champ Spring Co. v. United States (C. C. A.) 47 F.(2d) 1, 3, "The issue in this case is: To whom does the money in equity, justice, and good conscience belong?"

Whatever the basis of the liability may be, however, it is so identified with the contractual form of the remedy that no recovery in an action at law may be had against any one other than him to whom the erroneous payment was made. "The action should be against the person actually receiving the payment." 48 C. J. p. 770. See, also, Mattlage v. Lewi, 6 Misc. 150, 26 N. Y. S. 17; Briggs v. Lewiston, 29 Me. 472; Balls v. Haines, 3 Ind. 461. That being so, the plaintiff's statement of claim in this case is insufficient to support an action at law, and therefore the rule for judgment for want of sufficient affidavit of defense must be discharged.

Were this a suit in equity with the object of declaring a trust and following the fund into the hands of a transferee, different questions might arise. Upon the receipt of money paid in mistake of law which under the circumstances it is inequitable to retain, a constructive trust in favor of the payer arises. 65 C. J. p. 461; Pomeroy's Equity Jurisprudence, § 1047; In re Berry (C. C. A.) 147 F. 208. Under this theory, the traceability of the fund into the hands of the present defendant would be an important consideration. In the action at law of course it is immaterial. The thought here expressed is intended to be suggestive merely, and I am not expressing any opinion as to any of these matters. Nor shall I deal with the question of the transfer of this suit to the equity side by amendment under or otherwise, unless and until the plaintiff raises the question. The plaintiff may not elect to do so, but may prefer to stand on the suit at law in spite of the views herein expressed.

The only ruling that I make at the present time is to discharge the rule for judgment for want of sufficient affidavit of defense.