NEW YORK,
Oct. 1812.

VAN RENSSE-
LAER
v.
VAN RENSSE-
LAER.

━━●━━

### ROBERT S. VAN RENSSELAER *against* PHILIP S. VAN RENSSELAER.

THIS was an action of trespass. The declaration contained five counts; for breaking the plaintiff's close; taking down his saw-mill, flume, &c. and carrying away and converting the materials, &c. and for taking and carrying away divers quantities of timber, boards, &c. The defendant pleaded the general issue.

The cause was tried at the *Albany* circuit, in *April,* 1812, before Mr. Justice *Spencer.*

The plaintiff gave in evidence a durable lease from *Stephen Van*

A. by a permanent lease, conveyed a farm to B. reserving all the *mill-seats* with the privileges thereof. C. purchased the farm of B.,and D., while in possession of the farm under C., entered into an agreement with A. by which A. agreed to permit D. to erect a dam and mill, &c. on a creek, within the bounds of the farm, so conveyed to B. C. afterwards sold the farm as described in the *lease,* to E., and D. having quitted the possession, E pulled down the mills erected by D. who thereupon brought an action of trespass *quare clausum fregit,* against E. It was held, that the entry of D. under the agreement with A., and the erection of the mill, &c. was, so far, a severance of the freehold, and the mill thenceforth became a distinct and independent *close,* and did not pass to E. by the conveyance of the farm, under the lease: and that D. having the right, the mill, though no longer in his actual possession, remained his *close,* for the breach of which he might maintain trespass against E.

NEWYORK,
Oct. 1812.

VAN RENSSE-
LAER
v.
VAN RENSSE-
LAER.

*Rensselaer* to three persons of the name of *Slingerland*, dated the 28th *November*, 1788, for a farm in *Bethlehem*, in *Albany* county, including the premises on which the mill, &c. were erected, but excepting the mill-seats, with the privileges necessary for the same ; also an *agreement*, dated the 6th *August*, 1802, between *Stephen Van Rensselaer* and the plaintiff, in which the former agreed to " permit the said *Robert* to erect a dam and saw-mill, on the *Norman's* creek, within the bounds of the farm which, on the 28th of *November*, 1788, was conveyed by lease to *P. A. & R. Slingerland ;* the terms and conditions on which the said *Robert* is to hold the said mill to be agreed upon, and in case of disagreement, as to terms and conditions, the said *Robert* to yield and deliver up the said saw-mill and premises to the said *Stephen*, upon condition that the said *Robert* be paid a reasonable compensation for erecting the said saw-mill and dam."

Several witnesses testified as to the cost and value of the mill, dam, flume, &c.

It appeared that the dam was carried away by a *freshet*, in 1804, so that the mill was not afterwards used by the plaintiff.

It was admitted that *Maria Van Rensselaer*, the mother of the plaintiff, had purchased the title of the *Slingerlands*, and that the plaintiff possessed the farm, under her, at the time he entered into the agreement aforesaid, with *Stephen Van Rensselaer ;* and that in the spring of 1804, *Maria Van Rensselaer* sold and released the farm, by metes and bounds, as described in the original lease, to the defendant.

In 1805 the plaintiff demanded compensation for the mill, &c. from the defendant, but the defendant refused to make any, alleging that he had purchased the mill with the farm.    The plaintiff forbid the defendant from pulling down the mill.    The defendant's counsel, on this evidence, moved for a nonsuit, but the motion was overruled by the judge.    The defendant then gave in evidence a receipt given by the plaintiff, in behalf of his mother, for the purchase-money of the farm.    It was proved that *Stephen Sanders* went into possession of the farm in *April*, 1806, under the defendant, who offered to let the mill to him, but *Sanders* declined taking it.    The mill was taken down in the autumn of 1806, and the land on which it stood was, from that time, enclosed by the fence of *Sanders*, and pastured by him, until about two years since, when he left the farm.    The site of the mill was a barren spot, yielding nothing but a little grass.    The question of damages was submitted

to the jury, under the direction of the judge, and a verdict was found for the plaintiff, for 500 dollars.

A motion was made to set aside the verdict, and for a new trial.

*Henry* and *Van Vechten*, for the defendant, contended, that the motion for a nonsuit was improperly overruled by the judge, as the plaintiff, by his own witness, showed that he was out of possession when the mill was demolished, in 1806.

To maintain an action of trespass *quare clausum fregit*, the plaintiff must show an actual and legal possession.*

If the plaintiff be disseised, he cannot maintain an action for an injury done to the freehold, until a re-entry by him, unless it be for the mere act of ouster.†

To maintain trespass for goods taken, there must be an actual or constructive possession proved.‡

The plaintiff not only failed to show a title, but rested merely on his agreement.

In *Heermance* v. *Vervey*,§ it was decided that a person could not enter on the land of another, to take a personal chattel belonging to himself, without being a trespasser. There can be no constructive possession, where the party in possession demolishes the freehold.

The verdict is not only against law and evidence, but the amount of damages found by the jury is excessive and erroneous. They could not find damages for an injury to the freehold, but merely for the value of the materials after they were severed ; not for the mill itself, but only for the timber, &c. after it was demolished. The value of these was not proved to be more than 280 dollars.

*Parker* and *Champlin*, contra. The reservation to *Stephen Van Rensselaer*, of the mill-seat, &c. was good, and having entered under the lease, the mill-seat must be considered his freehold, as against the defendant. Though the plaintiff quitted the farm purchased from *Maria Van Rensselaer*, yet he did not thereby abandon the mill, or part with the freehold he had in it. Having the right, and having had the possession, it was not necessary that he should have a continued actual possession, every day, to enable him to maintain the action. A person who has the freehold continues to be the owner, and has the legal possession, though he does not occupy the premises.

*Margin notes:*
* 1 *Johns. Rep.* 511. 8 *Johns. Rep.* 471 7 *Johns. Rep.* 273. 276. *Ante*, 61, 62.
† *Bull. N. P.* 86. 11 *Co.* 51. 4 *Johns. Rep.* 157. 2 *Roll. Abr* 553.
‡ 8 *Johns. Rep.* 434. 5 *Bac. Abr. Trespass*, (C. 2.) 16. 18.
§ 6 *Johns. Rep.* 5.

NEWYORK,    The term *close* signifies the *interest* in the soil, not a mere en-
Oct. 1812.  closure.    *Trespass* lies, however temporary be the plaintiff's
VAN RENSSE- interest, and though it be merely in the profit of the soil.*
LAER
v.          This case is much stronger than that of *Stewart* v. *Doughty*,†
VAN RENSSE- in which it was decided that where a lessee, having a right to a
, 'ER.
* *Chit. Pl.* crop, as *emblements*, sold his right to a *third* person, who entered
173,   174. 6
*East.* 154 602. to reap the crop, but was driven out by the lessor, trespass *quare*
Co. *Litt.* 4 b.
† *Ante,* .09. *clausum fregit* would lie at the suit of the purchaser of the lessee's
            interest in the crop.

.   The question of damages was fairly submitted by the judge to
the jury, and the verdict ought not, therefore, to be disturbed on
that ground.

*Per Curiam.*    By the original lease from *Stephen Van Rens-*
*selaer* to the *Slingerlands*, he reserved to himself the mill-seats,
with the privileges necessary therefor; consequently, the mill-seat
and ground sufficient for the use of the mills, never passed to them.
The agreement between *Stephen Van Rensselaer* and the plaintiff
vested the latter with all the rights of the former, until the plaintiff
was paid a reasonable compensation for erecting the saw-mill and
dam, but, at all events, it rendered the plaintiff a tenant at will. The
sale by *Maria Van Rensselaer*, to the defendant, being only co-
extensive with the right held by the *Slingerlands*, did not, and
could not, pass that part of the premises on which the saw-mill
and dam were erected, because they were never granted to the
*Slingerlands*.    When *Stephen Van Rensselaer* gave the plaintiff a
right to enter and hold the interest reserved out of the *Slingerlands'*
lease, the entry and erection of a mill-dam, and saw-mill, was a
complete severance of the freehold, and it became a distinct and
independent *close*.    The circumstance of the dam's being carried
away, and the non-user of the mill thereafter, did not give to those
vested with the right of the *Slingerlands*, any interest whatever,
either in the dam or mill; but, in point of law, the possession of
them resided in the tenant of *S. Van Rensselaer*, who did no act
destructive of that tenancy.    In point of fact, the defendant had
not the possession of the mill, or dam, until he entered and did the
acts complained of as trespasses.

.   The fallacy of the argument of the defendant's counsel, relative
to the possession, is founded on a supposition that the defendant's
occupancy of the farm was necessarily an occupation of the mill-
dam; this is wholly incorrect, if they were distinct and independ-

ent hereditaments. That they were so, results from the reserva-
tion in the lease, and the actual entry under it.

In the spring of 1806, the defendant put *Sanders* in possession,
offering to let him have the mill, but he declined taking it; and
there is no evidence that the defendant ever possessed the mill or
dam, till he demolished both. The plaintiff having erected the
mill and dam, under authority from *Stephen Van Rensselaer*, in
whom the right resided, his tenancy never having been determin-
ed, on what principle can the defendant, who appears without the
colour of right, appropriate to himself the plaintiff's property?
Admitting that the possession of the mill and dam was vacant, it,
nevertheless, was the *close* of him who had the right; and for viola-
ting that right, trespass is the appropriate remedy. (1 *Chitt.* 174.)

A landlord may maintain trespass for trees, or other property
excepted in the lease, and any possession is sufficient, as against a
wrongdoer. (1 *Chitt.* 176.)

There is no solidity in the objection to the form of the action,
nor to the plaintiff's right to recover. The objection to the
amount of the verdict is equally untenable. The jury did right
in giving the plaintiff the value of the mill and dam as it stood, and
might have gone higher.

Motion denied.